8141. TOWALIGA FALLS POWER COMPANY *v.* FOSTER.

The evidence admitted over objection was material and relevant to the issues in the case. The instructions of the court excepted to are not, for any of the reasons assigned, erroneous. The evidence is sufficient to support the verdict, and the court did not err in denying the motion for a new trial.

DECIDED FEBRUARY 16, 1917.

Action for damages; from Butts superior court—Judge Searcy. January 7, 1916.

*Cleveland & Goodrich, Persons & Persons, W. E. Watkins,* for plaintiff in error. *C. L. Redman,* contra.

GEORGE, J. Foster brought suit against the Towaliga Falls Power Company, and alleged: that the defendant, several years before the filing of the suit, erected a dam across the Towaliga river, in Monroe county, thereby causing "the water in said river to flow up said river and its tributaries for several miles, creating a pond of back water over" a large area of land, and submerging therein

large quantities of timber, logs, trees, brush, and vegetable matter, causing the same to decay; that the said pond created and generated "impure and poisonous air, miasma, and malaria, and mosquitoes in great numbers, rendering the country thereabout unhealthy, and causing and transmitting miasma and malaria;" that the plaintiff and his family resided, during the years 1911 and 1912, and for many years prior thereto, on a farm owned by his mother, in the fork of Cabin creek and Towaliga river; that "the dwelling in which plaintiff and his family resided was within less than one half mile from the back water in said pond; that said pond of water was backed on two sides of said dwelling;" that his premises were "permeated with impure and poisonous air, miasma, and malaria, and . . infected with said mosquitoes, rendering said premises unhealthy and unfit for residential purposes;" that on account of the conditions described in the petition, he was stricken with malarial fever on the first day of August, 1911, and remained sick until the filing of his petition; that his business was farming, and the value of his services was $100 a month, and that he was unable to attend to his business for the period of sixteen months; that during the said time he experienced great pain and suffering; that his wife was also made sick, her sickness being caused by the unsanitary condition of the said pond and by the bites of the mosquitoes, and by breathing the said impure and poisonous air; that for sixteen months his wife was unable to perform her accustomed duties as a housewife, and he lost thereby $800, the value of her services; that by reason of the sickness of his wife and himself he expended $200 for medical treatment and drugs; that the said pond, in its present condition and in its condition during the years of 1911 and 1912, is a nuisance; that prior to 1911 and 1912 the home occupied by the plaintiff "was healthy and a desirable place to reside," and that he and his wife were, prior to the wrongs complained of in the petition, healthy and free from malaria. Damages were laid in the sum of $5,000 or other large sum, on account of the described sickness of the plaintiff and his wife, and on account of the great pain and suffering experienced by him from his sickness. The jury found for the plaintiff in the sum of $1,500, and the defendant filed a motion for new trial, which was overruled; and it excepted.

1. In grounds 1, 2, and 3 of the amendment to the motion for

a new trial, exceptions are taken to the admission of certain evidence offered by the plaintiff. The evidence objected to is to the effect that the water in the river was backed by the building of the dam, and covered a large area of land, from which the brush and timber had not been removed, resulting in the decay of the brush and timber and causing the water to stagnate and mosquitoes to breed, and producing offensive odors; that in 1911 and 1912 mosquitoes in great numbers were on the pond of the defendant company, and that prior to the erection of the dam and the raising of the water in the river, no mosquitoes were known to exist in the swamp. The specific objection urged was that the evidence referred to conditions existing generally and in all parts of the pond of the defendant. The evidence was not confined to the condition of the pond nearest the plaintiff's home, but evidence of the general condition of the pond was, under the pleadings in this case, properly admitted in evidence.

2. Complaint is further made of the ruling of the court in permitting Dr. Phillips, a witness for the plaintiff, to testify that a person living near a pond and breathing bad odors and impure air would be thereby depressed and rendered more susceptible to malarial fever, because his power of resistance to the bite of the mosquito would be lessened or reduced. We think this evidence was admissible under the pleadings in this case. While the medical testimony introduced by the plaintiff was to the effect that only malarial fever could be transmitted by the mosquito, the foul and offensive odors arising from the pond are alleged in the petition to be one of the causes producing the sickness of the plaintiff and his wife. It was competent for him to prove that this condition of the pond, as well as the mosquitoes, either caused, or contributed to cause, the injuries set forth in his petition. The impure air arising from the pond can not, under the evidence in this case, be considered as the direct and sole cause of his illness, but, according to the testimony of the physician, it contributed to cause the sickness to both the plaintiff and his wife.

3. The charge complained of in ground 5, based upon the physician's testimony referred to above, was not, for any of the reasons assigned, erroneous, and was properly adjusted to the facts of the case.

4. Grounds 6 and 7 were addressed primarily to the discretion

of the trial judge. Counsel for the plaintiff in error have properly abandoned them in this court.

5. The court charged the jury as follows: "In some torts the entire injury is to the peace, happiness, or feeling of the plaintiff, and, in estimating these damages, no rule for fixing or estimating them can be prescribed, except the enlightened conscience of fair and impartial jurors. The amount to be recovered, if any, is such as shall be assessed by fair and impartial jurors, acting from their enlightened conscience as to what would be fair and just to both parties;" and further charged that "general damages are such as the law presumes to flow from the tortious act, and may be recovered without proof of any amount." The plaintiff in error contends that these instructions are error for the following reasons: (1) that the plaintiff did not claim damages for injury to peace, happiness, or feeling; (2) that there were no acts of aggravation, either in the act or intention, shown by the evidence in the case; and (3) that, under the facts of the case, general damages, in addition to damages for lost time, loss of services of the wife, and medical expenses, were not recoverable. We think they were. In the case of *Swift* v. *Broyles,* 115 *Ga.* 885 (42 S. E. 277, 58 L. R. A. 390), the Supreme Court said: "Undoubtedly, it was [the plaintiff's] right to receive additional compensation for any annoyance or discomfort occasioned by the air in and about his dwelling-house being permeated with noisome gases and offensive odors discharged from defendant's fertilizer plant. . . Where there is such a wrongful interference with the comfortable enjoyment of property by a person in possession, no precise rule for ascertaining the damage can be given, as, in the very nature of things, the subject-matter affected is not susceptible of exact measurement; therefore the jury are left to say what, in their judgment, the plaintiff ought to have in money, and what the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the nuisance." See also *Jones* v. *Royster Guano Co.,* 6 *Ga. App.* 506 (65 S. E. 361).

6. The court charged the jury as follows: "If you find, from the evidence, that the sickness of the plaintiff and his wife (if you find they were sick) was caused, as alleged in his petition, by malarial fever, caused by the unsanitary condition of said pond, and

from the bite of mosquitoes, which transmitted to him, and also to his wife, malaria, and by breathing said impure and poisonous air from the pond of the defendant company, and not from elsewhere, you would be authorized to find for the plaintiff." Exception is taken to this charge on the ground that the court therein intimated and expressed an opinion "that the pond of the defendant was in an unsanitary condition, and that it produced impure and poisonous air, and that it produced mosquitoes." We do not think that the judge in this charge intimated or expressed any opinion on the disputed issues in this case, and certainly the jury could not have so construed the charge.

The evidence supports the verdict; and since the petition charged that the plaintiff's injuries resulted not alone from the bite of the particular mosquitoes claimed to cause or transmit malaria, but from the breathing of foul and impure air arising from the pond of the defendant, and due to the decaying vegetable matter negligently left therein by the defendant, the court properly admitted evidence to the effect that impure air and foul and poisonous odors arising from such condition would reduce the power of resistance of one brought constantly in close proximity thereto, and render such person more susceptible to malaria; and the court correctly gave to the plaintiff the benefit of such contention upon the trial of the case. Under the pleadings and the evidence the jury were authorized to find that the impure and poisonous air arising from the defendant's pond, and the bite of the mosquitoes coming therefrom, either caused, or contributed to cause, the fever from which he suffered. There was no error in overruling the motion for a new trial.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*